## THE MINNIE SMITH.

### QUEBEC STEAMSHIP CO. v. THE MINNIE SMITH.

(Circuit Court of Appeals, Second Circuit. August 1, 1893.)

COLLISION—STEAM AND SAIL—CONFLICTING EVIDENCE.

The steamer C., on a course S. by E. on the open sea, sighted the schooner M., sailing on a course N. by W. ½ W. On behalf of the steamer,

her second officer testified that the schooner was sighted at 4:20 A. M., two miles distant, without lights; that no change of course by the steamer seemed necessary; that when next noticed, 10 minutes later, about two steamer lengths from the C., the schooner suddenly altered her course to N. E., across the steamer's bows, whereupon the C. put her helm hard a-port, turning about 20 degrees, and reversed her engines at full speed. Testimony on behalf of the schooner was very full, to the effect that both her lights were in good order and burning; that the steamer's white light was first seen about half a point on the starboard bow; that both colored lights were seen at a distance of two miles; that the schooner's course was then changed to N. N. W., so as to show only the starboard light; that the steamer from this time was sheering about, showing each colored light alternately; that the schooner's mate, becoming alarmed, summoned the captain on deck, and at the distance of one-quarter of a mile fired a shotgun, whereupon the steamer suddenly changed her course to port, and the vessels collided. The port bow of the steamer struck the port quarter of the schooner at an angle of five points. *Held,* that the preponderance of evidence showed the steamer alone was in fault.

Appeal from the District Court of the United States for the Southern District of New York. Affirmed.

Wilhelmus Mynderse, for appellant.

W. W. Goodrich, for claimants and libelees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is an appeal from a decree of the district court for the southern district of New York, which dismissed the libel of the Quebec Steamship Company, owner of the steamship Caribbee, against the schooner Minnie Smith, to recover damages for a collision between said vessels in the Atlantic ocean, about 330 miles from Bermuda, on April 15, 1891. The collision took place about daybreak, the sky being clear, and the wind blowing moderately from the southeast.

The Caribbee was on a voyage from New York to the West Indies, and the Minnie Smith was bound from San Domingo to New York. The vessels were two or three miles apart when the schooner, whose course was N. by W. ½ W., first sighted the steamer, whose course was about S. by E. The sailing vessel was making about 3 or 4 knots per hour. The speed of the steamer was about 10 knots per hour.

The theory of the libelant, as stated in the libel, and in the testimony of the second officer of the Caribbee, who was in charge of her navigation at the time of the collision, is that the schooner was sighted about 20 minutes past 4 o'clock, about 2 miles distant, without lights; that no apparent necessity for a change in the course of the steamer existed, and none was made; that when the schooner was next noticed, about 10 minutes afterwards, and about a couple of steamer lengths from the Caribbee, she suddenly altered her course across the steamer's bow, and headed northeast, whereupon the Caribbee's helm was put hard a-port; her heading turned about 20 degrees, and an order was given to reverse the engines at full speed, when the port bow of the steamer came in col-

lision with the schooner, and the latter was struck on the port quarter. The steamer's position is that there was no necessity for either vessel to change her course, and that she did not change, until she was compelled to do so by the schooner's sudden and inexcusable attempt to cross the steamer's bow.

The testimony on the part of the schooner is very full, and is to the effect that both her lights were in good order and burning; that the steamer's white light was first seen about half a point on the schooner's starboard bow, and thereafter, when the vessels were two miles apart, both colored lights were seen. The schooner's course was then changed to N. N. W., so that the steamer might only see the starboard light, and know which way she was going; that from that time the steamer was sheering about, showing both lights, and each light alternately, until the mate, who was in charge, became alarmed, summoned the captain on deck, and afterwards, when she was distant about one-fourth of a mile, fired a shotgun to attract her attention; and that at the time of the gun firing she suddenly again changed her course to port, and the collision occurred.

The testimony for the libelant does not satisfy the mind that any vigilant attention was paid by the steamer to the schooner, while, in the language of the district judge, "those on board of the schooner show every evidence of vigilance, alert attention, and care."

The steamer was watched from the moment that her white light was first seen. Her singular movements, which brought each colored light alternately into view, created anxiety. The captain was summoned, and the gun was fired in order to arouse the wheelman, if he was asleep. The order of events, and the circumstances which took place on board the schooner, show that at the time the careless navigation of the steamer justly created alarm, and now lead to the conclusion that upon the steamer rested the fault which caused the unnecessary collision.

The witnesses agreed that the port bow of the Caribbee struck the port quarter of the Minnie Smith, the angle between the port sides of the two vessels being about five points. How this could have happened without a change of course by both vessels to the eastward, which each vessel denies, it is not easy to understand. We concur with the district judge, who said that "any such change [of at least five points to the eastward] by either alone, and especially by the steamer, involves very great difficulty and improbability in navigating so as to come into collision." But we also concur with him in the conclusion that the greatly preponderating evidence on the part of the claimant "must prevail, and the steamer held the responsible cause of the collision, even though the angle of collision were made up in part by some porting of the schooner in extremis, though the evidence does not warrant that finding."

The decree of the district court is affirmed, with costs.